**STARN • O'TOOLE • MARCUS & FISHER**
A Law Corporation

DOUGLAS S. CHIN          6465-0
JOHN W. KELLY            9907-0
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawai'i 96813
Telephone: (808) 537-6100
Facsimile: (808) 537-5434
Email:  dchin@starnlaw.com
        jkelly@starnlaw.com

**WILLIAMS & CONNOLLY LLP**

ENU MAINIGI *(pro hac vice)*
CRAIG D. SINGER *(pro hac vice)*
R. KENNON POTEAT III *(pro hac vice)*
A. JOSHUA PODOLL *(pro hac vice)*
DANIEL DOCKERY *(pro hac vice)*
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email:  emainigi@wc.com
        csinger@wc.com
        kpoteat@wc.com
        apodoll@wc.com
        ddockery@wc.com

Attorneys for Defendant
CAREMARKPCS HEALTH, L.L.C.

3203802.1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| STATE OF HAWAI‘I, EX REL. ANNE E. LOPEZ, ATTORNEY GENERAL, <br><br>            Plaintiffs, <br><br>     v. <br><br> CAREMARKPCS HEALTH, L.L.C.; EXPRESS SCRIPTS, INC.; and OPTUMRX, INC., <br><br>            Defendants. | CIVIL NO. 1:23-cv-00464-LEK-RT (Other Civil Action) <br><br> **DEFENDANT CAREMARKPCS HEALTH, L.L.C.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF STATE OF HAWAII'S RENEWED MOTION TO REMAND [ECF 167]; DECLARATON OF JOE ANDERSON; DECLARATION OF MICHAEL PERRY; DECLARATION OF DOUGLAS S. CHIN; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE** <br><br> <u>Hearing</u>: <br> Date:   February 28, 2025 <br> Time:   9:45 a.m. <br> Judge:   Honorable Leslie E. Kobayashi <br><br> [No Trial Date Set] |

**DEFENDANT CAREMARKPCS HEALTH, L.L.C.'S**
**MEMORANDUM IN OPPOSITION TO**
<u>**PLAINTIFF STATE OF HAWAII'S RENEWED MOTION TO REMAND**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...........................................................................................1

BACKGROUND ...........................................................................................2

PROCEDURAL HISTORY...........................................................................3

LEGAL STANDARD.....................................................................................9

ARGUMENT ..............................................................................................10

I.      The State's New Disclaimer Does Not Defeat Jurisdiction .........................11

II.     Caremark Still Satisfies the Elements of Federal Officer Removal.............18

        A.      Caremark Acts Under a Federal Officer When It Negotiates
                Rebates for FEHBA Plans..........................................................18

        B.      This Lawsuit Relates To Caremark's Federal Duties ........................22

        C.      Caremark Has Colorable Federal Defenses ......................................24

CONCLUSION............................................................................................26

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>CASES</u>

*Agyin v. Razmzan*,
    986 F.3d 168 (2d Cir. 2021) ...................................................................10

*Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*,
    2017 WL 5892255 (D. Haw. Sept. 27, 2017)........................................11

*Baker v. Atl. Richfield*,
    962 F.3d 937 (7th Cir. 2020) ........................................................ 12, 14

*Buljic v. Tyson Foods, Inc.*,
    22 F.4th 730 (8th Cir. 2021) ...................................................................10

*California v. CaremarkPCS Health, L.L.C.*,
    2024 WL 3770326 (9th Cir. Aug. 13, 2024).............................. passim

*California v. Eli Lilly & Co.*,
    2023 WL 4269750 (C.D. Cal. June 28, 2023).........................................5

*Caris MPI v. UnitedHealthcare*,
    108 F.4th 340 (5th Cir. 2024)..................................................................21

*Chamber of Com. v. Bonta*,
    62 F.4th 473 (9th Cir. 2023)....................................................................25

*Corley v. Long-Lewis*,
    688 F. Supp. 2d 1315 (N.D. Ala. Jan. 28, 2010).................................16

*County of San Mateo v. Chevron*,
    32 F.4th 733 (9th Cir. 2022)....................................................................21

*Coventry Health Care of Mo., Inc. v. Nevils*,
    581 U.S. 87 (2017) ....................................................................................25

*DeFiore v. SOC LLC*,
    85 F.4th 546 (9th Cir. 2023)....................................................................23

*Goncalves ex rel. Goncalves v. Rady Children's Hosp.*,
    865 F.3d 1237 (9th Cir. 2017) ............................................................9, 21

*Gonzalez v. Arizona*,
    677 F.3d 383 (9th Cir. 2012) ...................................................................11

*In re Commonwealth's Mot. to Appoint Couns. Against or Directed to
    Def. Ass'n of Phila.*,
    790 F.3d 457 (3d Cir. 2015) ....................................................................20

*Jefferson County v. Acker*,
    527 U.S. 423 (1999) ..................................................................... 17, 21

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ............................................... 9, 10, 16

*Mohr v. Trs. of Univ. of Pa.*,
    93 F.4th 100 (3d Cir. 2024) .....................................................................21

*Oberstar v. CBS*,
    2008 WL 11338471 (C.D. Cal. Feb. 11, 2008) ...................................14

*Papp v. Fore-Kast Sales Co.*,
    842 F.3d 805 (3d Cir. 2016) ....................................................................10

*Plaquemines Parish v. BP Am. Prod.*,
    103 F.4th 324 (5th Cir. 2024) ..................................................................21

*Puerto Rico v. Eli Lilly & Co.*,
    2023 WL 4830569 (D.P.R. July 13, 2023) ..............................................6

*Puerto Rico v. Express Scripts, Inc.*,
    119 F.4th 174 (1st Cir. 2024) .................................................... passim

*Royal Canin U.S.A. v. Wullschleger*,
    2025 WL 96212 (2025) .............................................................................25

*St. Charles Surgical Hosp. v. La. Health Serv. & Indem.*,
    990 F.3d 447 (5th Cir. 2021) ...................................................................12

iii

*White v. Sabatino*,
    424 F. Supp. 2d 1271 (D. Haw. 2006) ...................................................................12

## STATUTES

5 U.S.C. § 8902(m) ...................................................................................................24
28 U.S.C. § 1442(a)(1)........................................................................................ passim
42 U.S.C. § 1396r-8 ....................................................................................................3
H.R.S. § 431S-1 ..........................................................................................................3
H.R.S. § 480-2.............................................................................................................3

# INTRODUCTION

As the Court already held, Defendant CAREMARKPCS HEALTH, L.L.C. ("Caremark") properly removed under the federal officer removal statute because this action challenges Caremark's work negotiating pharmaceutical rebates that apply to Caremark's Federal Employee Health Benefits Act ("FEHBA") clients, a task Caremark carries out under the direction of the Office of Personnel Management ("OPM"). This Court rejected Plaintiff STATE OF HAWAII's (the "State") first attempt to avoid federal jurisdiction by purporting to disclaim Caremark's federal conduct. On its second try, the State claims remand is warranted based on evidence obtained in jurisdictional discovery. But the State's evidence consists of three admissions that have nothing to do with Caremark's asserted basis for removal or this Court's order denying remand. Perhaps recognizing that its attempt at jurisdictional discovery was not fruitful, the State principally urges the Court to remand based on a repackaged jurisdictional disclaimer. But its newly worded disclaimer is substantively identical to the one the Court already rejected, and the State provides no reason for this Court to deviate from its earlier ruling.

Intervening developments in the related insulin-pricing litigation confirm that this Court's initial ruling was correct. Since this Court's order denying remand, two courts of appeals also ruled in Caremark's favor on the precise issues presented, and reversed district court orders granting remand. *See California v. CaremarkPCS*

*Health, L.L.C.*, 2024 WL 3770326 (9th Cir. Aug. 13, 2024); *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024). Consistent with these two appellate rulings and this Court's earlier order, the Court should deny the State's motion.

## BACKGROUND

Pharmacy Benefit Managers ("PBMs") such as Caremark, Defendant EXPRESS SCRIPTS, INC. ("Express Scripts"), and Defendant OPTUMRX, INC. are "hired by third-party payors for the benefit of consumers." Remand Order at *2.[1] To that end, PBMs provide a range of pharmacy care services to their clients designed to lower the clients' net drug costs. For instance, PBMs "create[] drug formularies—a list of prescription drugs covered by health plans tiered according to consumers' cost-share obligations." *Id.* Health plan clients can adopt those formularies to cover the cost of certain medications for their members. Supp. Notice of Removal ("Notice") ¶ 6, Dkt. 8. PBMs also "negotiate[] rebates with drug manufacturers on behalf of FEHBA carrier clients as well as other clients." Remand Order at *4. As required by contract, PBMs "pass all rebates they receive onto their FEHBA carrier clients," lowering their clients' net drug costs. *Id.* at *13; Notice ¶¶ 3, 7. To maximize its leverage, Caremark negotiates for multiple clients at the same time, and its rebate agreements are structured so as to cover a range of different

---

[1] "Remand Order" refers to this Court's order denying remand, Dkt. 85, published at 2024 WL 1907396 (D. Haw. May 1, 2024).

clients and different formulary possibilities.    Declaration of Joe Anderson
("Anderson Decl.") ¶ 5.    Both state and federal law recognize that PBMs will
negotiate rebates to offset their clients' drug costs, and the State itself contracts with
PBMs to negotiate rebates for its own health plans.  *See* Second Amended Complaint
("SAC") ¶¶ 3, 8, Dkt. 166; 42 U.S.C. § 1396r-8; H.R.S. § 431S-1.

The State's lawsuit takes aim at these well-known, industry-standard
arrangements between PBMs and manufacturers of pharmaceutical drugs, and
claims that the PBMs' conduct negotiating pharmaceutical rebates violates Hawai'i
law.  *See* SAC ¶¶ 1–10.  As this Court explained, the State alleges that Defendants
"artificially inflate[d] the prices of prescription drugs by requiring drug
manufacturers to pay rebates in exchange for preferred placement on the PBM's drug
formulary."  Remand Order at *10.  The State asserts three claims under the Hawai'i
Unfair and Deceptive Trade Practices Act, H.R.S. § 480-2, *see* SAC ¶¶ 248–88.

## PROCEDURAL HISTORY

1.    On October 4, 2023, the State sued in the Circuit Court of the First
Circuit, State of Hawai'i challenging Defendants' negotiation practices.    First
Amended Complaint ("FAC"), Dkt. 1-2.  In an effort to avoid federal jurisdiction,
the State's complaint represented that "[t]he State is not seeking relief relating to any
federal program (*e.g.*, . . . FEHBA) or any contract related to a federal program."  *Id.*
¶ 22.

Express Scripts removed the action to this Court, and Caremark filed a Supplemental Notice of Removal. Dkts. 1, 8. In its Notice, Caremark alleged it was entitled to federal officer removal because it "acted under" OPM when negotiating pharmaceutical rebates for FEHBA carriers, and because it had a colorable federal preemption defense. Caremark also alleged that the State's purported disclaimer was ineffective because "[t]he State could not possibly sever Caremark's conduct negotiating rebates for FEHBA carriers from other conduct that the State alleges harms them." Notice ¶ 37. The State moved to remand. Dkt. 29.

This Court denied the State's motion. The Court reasoned that, in light of OPM's extensive oversight and auditing of Caremark's rebating practices, Caremark's actions "regarding its formulary and rebate practices were actions under a federal officer, *i.e.* OPM." *See* Remand Order at *9 (citation omitted). The Court also found that the lawsuit bore a causal nexus to Caremark's federal duties "[b]ecause Caremark negotiates rebates collectively and does not have separate contracts for FEHBA plans and non-FEHBA plans." *Id.* at *10. And the Court concluded that Caremark had a "colorable defense that the FEHBA expressly preempts" the State's claims because the claims "arguably relate to the FEHBA carrier clients' right to repayment for prescription drug benefits," and to "the coverage or benefits that the FEHBA carrier clients provide." *Id.* at *13. The Court held that the State's disclaimer did not sever the federal connection because

4

"Caremark negotiates rebates for multiple clients collectively," such that "if Caremark did violate [Hawaiʻi law] in its rebate negotiations, the violations may have happened under OPM's direction." *Id.* at *12.

2.    Since the Remand Order, two courts of appeals have agreed with this Court's ruling, in similar lawsuits challenging Defendants' rebating practices and alleging an industrywide conspiracy to raise the price of insulin and non-insulin diabetes drugs.

The first case was brought by the State of California. *California v. Eli Lilly & Co.* ("*California I*"), 2023 WL 4269750 (C.D. Cal. June 28, 2023), *rev'd*, 2024 WL 3770326 (9th Cir. Aug. 13, 2024). California attempted to plead around jurisdiction by disclaiming recovery for alleged overpayments related to FEHBA plans or federally mandated copays. *Id.* at *3. The district court credited California's disclaimer and granted remand, in an opinion the State in this case relied on extensively in its original remand motion. *See id.* at *6–7; Dkt. 29 at 3–4, 7, 9, 13; Dkt. 75 at 3, 5–6. The Ninth Circuit reversed, holding that California's disclaimer was invalid because it "fail[ed] to *explicitly* release claims or possible recovery from rebate practices as they relate to FEHBA." *California v. CaremarkPCS Health LLC* ("*California II*"), 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024).

5

Judge Ikuta concurred, explaining that "no disclaimer, however worded" could sever the nexus between Caremark's rebate negotiations and California's claims because "Caremark's work for private clients cannot be disaggregated from its work for the federal government." *Id.* at *2 (Ikuta, J., concurring). Thus, Judge Ikuta explained, "in targeting Caremark's rebate negotiations for private clients, California necessarily also targets Caremark's rebate negotiations for the federal government (since they are the same negotiations)." *Id.*

The second case was brought by the Government of Puerto Rico, represented by the same national counsel that Hawaiʻi has retained here. *Puerto Rico v. Eli Lilly & Co.* ("*Puerto Rico I*"), 2023 WL 4830569 (D.P.R. July 13, 2023), *rev'd*, 119 F.4th 174 (1st Cir. 2024). Like California, Puerto Rico attempted to avoid jurisdiction by disclaiming "relief relating to any federal program." *Id.* at *1. Relying largely on *California I* and the same since-discredited arguments the State pressed in its first remand motion, the district court in *Puerto Rico I* granted remand. *See id.*; Dkt. 29 at 9, 12–13; Dkt. 75 at 3–5, 8–9. The First Circuit reversed, relying extensively on this Court's Remand Order. *Puerto Rico v. Express Scripts, Inc.* ("*Puerto Rico II*"), 119 F.4th 174, 180, 187, 190, 191, 193 (1st Cir. 2024). Citing this Court's Remand Order, the First Circuit held that "Caremark was acting under federal authority when it negotiated rebates" because "[w]hen Caremark negotiates rebates on behalf of FEHBA carriers, it assists OPM in carrying out its official task of administering

6

federal health benefits." *Id.* at 190. The court held that Puerto Rico's lawsuit related to those federal duties because Puerto Rico "claim[ed] that these negotiations were part of a larger scheme . . . to inflate insulin prices," and that Caremark possesses "a colorable federal defense for its negotiations on behalf of FEHBA carriers." *Id.*

The First Circuit also rejected Puerto Rico's argument that it had effectively disclaimed any claims with a federal nexus. The First Circuit agreed with this Court that disclaimers are valid only if they "clearly carve out certain factual bases, whether by time span or location, such that any alleged injury could not have happened under the direction of a federal officer." *Id.* at 187 (quoting Remand Order at *11) (cleaned up). Puerto Rico's disclaimer failed under that standard because, "[d]espite the Commonwealth's artful pleading, its claims necessarily involve Caremark's rebate negotiations within OPM's parameters." *Id.* at 191. Agreeing with Judge Ikuta, the First Circuit held that a lawsuit seeking to hold Caremark "liable for its conduct in negotiating rebates for private clients and FEHBA plans" would give rise to removal "no matter what the disclaimer says." *Id.*

3.    After the Court issued its Remand Order, the State sought jurisdictional discovery.[2] Caremark responded to three Requests for Admission and stated that no federal officer or entity had directed: (1) that "Rebate Negotiations applicable to

---

[2] The State also moved to modify the Remand Order or to certify it for interlocutory appeal, but the State abandoned that effort. Dkts. 95, 125.

Federal Health Benefits Programs must be conducted simultaneously with Rebate Negotiations applicable to Non-Federal Health Benefit Programs"; (2) that "Rebate Negotiations applicable to Federal Health Benefit Programs must be applied to Non-Federal Health Benefit Programs"; or (3) that "terms applicable to Federal Health Benefit Programs must be applied to Non-Federal Health Benefit Programs." Dkt. 167-2 at 18, 21, 24. The State sought no further discovery.

On October 30, 2024, the Court granted Defendants' motion to dismiss with leave to amend. *See* Dkt. 158. The State filed its SAC on November 27, 2024, which similarly challenges Caremark's formulary and rebating practices. Dkt. 166. The SAC alleges that Caremark "indirectly control[s] list prices by negotiating rebates so high that manufacturers must raise their prices to maintain their revenue and profit margins." *Id.* ¶ 116. The State complains that Caremark gave "preferential [formulary] treatment to drugs with the highest rebates," and "extract[s] higher rebates from manufacturers by" making certain "promis[es]" during rebate negotiations. *See id.* ¶¶ 9, 79. The State blames rising drug prices on "rebates and other fees that PBMs demand," claiming that "most" increased drug prices are "attributable to rebates." *Id.* ¶¶ 106, 114, 156. The State claims rebates are not the product of legitimate negotiations, but are "quid pro quo . . . to gain access to [the PBMs'] formularies." *Id.* ¶ 214; *see also, e.g., id.* ¶¶ 82, 190, 198, 282–84.

The State again purported to disclaim jurisdiction, stating it "does not make any claims regarding or seek recovery for any acts or practices relating to any federal health insurance and/or health benefits program, including but not limited to . . . [FEHBA] plans." *Id.* ¶ 12.  The State filed its second remand motion on the basis of its "clarified disclaimer" and the three discovery responses.  Dkt. 167-1 at 2.

## LEGAL STANDARD

The federal officer removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court.    Remand Order at *4 (quoting 28 U.S.C. § 1442(a)(1).  The purpose of this statute is "to ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his duties." *Id.* (quoting *Goncalves ex rel. Goncalves v. Rady Children's Hosp.*, 865 F.3d 1237, 1244 (9th Cir. 2017)).  Thus, "the right of removal is absolute for conduct performed under color of federal office, and the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* (cleaned up).

In assessing federal officer jurisdiction, the removing party's "factual allegations will ordinarily be accepted as true unless challenged" by the party opposing removal.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).  If a party brings a "facial attack" by claiming that the facts in the notice of removal "are insufficient on their face to invoke federal jurisdiction," the

Court accepts the well-pleaded allegations in the notice of removal as true, and draws all reasonable inferences in the removing party's favor. *See id.* If the party opposing jurisdiction raises a "factual" challenge by disputing the facts alleged, the removing party must support the disputed allegations with "competent proof." *See id.* Regardless of the type of challenge, the Court "must credit the defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer." *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021) (cleaned up).[3]

## ARGUMENT

This Court held in its Remand Order that Caremark had met its burden of establishing the three elements of federal officer removal: (1) it is a "person" within the meaning of the statute, (2) there is a "causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims," and (3) it can "assert a colorable federal defense." Remand Order at *4 (citation omitted). The State does not dispute that these removal elements are met absent its purported disclaimer. The State instead claims that its newly worded disclaimer, and Caremark's three discovery responses, eliminate jurisdiction. But the State's new purported

---

[3] Contrary to the State's assertion (at 4), there is no "presumption against removal" in federal officer cases. *See Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021). The State similarly is wrong to claim (at 5) that private parties seeking removal under that statute "bear some additional 'special burden.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812–13 (3d Cir. 2016).

disclaimer still fails because the State did not even attempt to cure the deficiencies this Court identified. And none of the State's arguments undercut this Court's holding that Caremark acts under a federal officer, that this lawsuit relates to Caremark's federal duties, and that Caremark has a colorable federal defense.

## I.  The State's New Disclaimer Does Not Defeat Jurisdiction.

Although the State purports to bring its second remand motion on the basis of jurisdictional discovery, it spends most of its brief urging the Court to grant remand based on the new disclaimer in the SAC. But the State's new disclaimer is substantively identical to the one this Court already rejected:

| Old Disclaimer | New Disclaimer |
|---|---|
| "The State is not seeking relief relating to any federal program (*e.g.*, Medicaid, Medicare, TRICARE, FEHBA) or any contract related to a federal program." FAC ¶ 22. | "[T]he State does not make any claims regarding or seek recovery for any acts or practices relating to any federal health insurance and/or health benefits program, including but not limited to Medicaid, Medicare, TRICARE, and/or Federal [Employees] Health Benefits Act ('FEHBA') plans." SAC ¶ 12. |

The Court's Remand Order rejecting a substantively identical disclaimer is law of the case, so the State could prevail only by showing that (1) the Remand Order was "clearly erroneous and its enforcement would work a manifest injustice," (2) reconsideration is appropriate due to "intervening controlling authority," or (3) "substantially different evidence" later was adduced. *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc); *see Am. Auto. Ins. Co. v. Hawaii Nut & Bolt,*

*Inc.*, 2017 WL 5892255, at \*4 (D. Haw. Sept. 27, 2017); *White v. Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) (motion for reconsideration). The State does not even attempt to meet this demanding standard, and its new disclaimer again fails.

1.    This Court held that to eliminate the basis for federal officer jurisdiction, plaintiffs must plead an "[e]xpress claim waiver" that "clearly carves out certain factual bases, whether by time span or location, such that any alleged injury could not have happened under the direction of a federal officer." Remand Order at \*11; *see Puerto Rico II*, 119 F.4th at 187 (adopting this standard). The Remand Order explained that courts routinely reject disclaimers that fail this test. For example, courts refuse to credit "[a]mbiguous waivers" that fail to clearly identify and disclaim the defendants' federal conduct, because such waivers do not effectively eliminate federal issues from the case. Remand Order at \*11; *see California II*, 2024 WL 3770326, at \*1. Courts similarly reject "[o]verbroad waivers" in which plaintiffs purport to disclaim federal conduct, but nevertheless continue to challenge the defendant's federal work. Remand Order at \*11; *see Baker v. Atl. Richfield*, 962 F.3d 937, 945 n.3 (7th Cir. 2020); *St. Charles Surgical Hosp. v. La. Health Serv. & Indem.*, 990 F.3d 447, 451 (5th Cir. 2021). And courts will not grant remand based on "[j]urisdictional waivers," which parrot jurisdictional language without disclaiming any factual allegations. Remand Order at \*11.

Applying this standard, the Court rejected the State's original purported disclaimer of any "relief relating to any federal program (*e.g.*, … FEHBA) or any contract related to a federal program." *Id.* at *12. The Court explained that the State "fail[ed] to assert an express claim waiver" because "Caremark negotiates rebates for multiple clients collectively," such that if Caremark violated Hawaiʻi law, "the violation may have happened under OPM's direction." *See id.*

Agreeing with this Court, the First Circuit likewise rejected Puerto Rico's disclaimer of "relief relating to any federal program . . . or any contract related to a federal program." *Puerto Rico II*, 119 F.4th at 181, 191. Notwithstanding the purported disclaimer, Puerto Rico's lawsuit targeted Caremark's federal work because Caremark "negotiates for rebates with manufacturers simultaneously for FEHBA and non-FEHBA plans." *Id.* at 191. Because these negotiations "cannot be disassembled, crediting the disclaimer would foreclose Caremark's right to have a federal court evaluate its 'colorable' preemption defense," and "undercut § 1442(a)(1)'s requirement that federal courts determine whether a defendant acted under a federal officer's authority." *Id.*

2.    The State's new purported disclaimer fails for the same reasons. In its newly worded disclaimer, the State alleges that it "does not make any claims regarding or seek recovery for any acts or practices relating to any federal health insurance and/or health benefits program," including "FEHBA[] plans." SAC ¶ 12.

13

The State's new disclaimer does not attempt to "expressly carve out certain factual bases, . . . by time span or location, such that any alleged injury caused by Caremark could not have happened under OPM's direction." Remand Order at *11. The State does not even address this Court's earlier ruling on this key issue.

Nor plausibly could it, because the State's new purported disclaimer falls squarely within the categories of waivers the Court held were *invalid*. *First*, the disclaimer is "[a]mbiguous" such that it "leave[s] some claims" involving Caremark's federal conduct in the case. *Id.* Although the State purports to disclaim "acts or practices related to . . . FEHBA," it does not attempt to identify and disclaim any specific FEHBA-related conduct. And because the State challenges Caremark's rebating conduct that involves FEHBA and non-FEHBA plans, the disclaimer is at least "subject to conflicting interpretations" about what conduct is challenged. *See id.*; Anderson Decl. ¶¶ 5–6. The State "cannot have it both ways" by challenging Caremark's negotiations that include its FEHBA clients but simultaneously disclaiming federally related conduct. *See* Remand Order at *11; *Baker*, 962 F.3d at 945 n.3.

*Second*, even if the disclaimer purported to waive all FEHBA rebate negotiations (it does not), it would be flatly inconsistent with the State's core theory of the case and therefore "[o]verbroad." Remand Order at *11; *see Oberstar v. CBS*, 2008 WL 11338471, at *3 (C.D. Cal. Feb. 11, 2008). The State squarely challenges

14

Caremark's rebate negotiations. *Supra* p.8. But as this Court recognized, "Caremark negotiates rebates for multiple clients collectively," so if Caremark's rebate negotiations were unlawful "the violation may have happened under OPM's direction." Remand Order at *12; Anderson Decl. ¶¶ 5–6. Because the State "seeks damages based on Caremark's rebate negotiations, even though Caremark negotiates for FEHBA and non-FEHBA claims simultaneously," the State "seeks to hold Caremark liable for acts that appear to otherwise entitle it to removal." *Puerto Rico II*, 119 F.4th at 192. By "targeting Caremark's rebate negotiations for private clients," the State thus "necessarily also targets Caremark's rebate negotiations for the federal government (since they are the same negotiations)." *California II*, 2024 WL 3770326, at *2 (Ikuta, J., concurring).

*Third*, the State's new purported waiver is an invalid "[j]urisdictional disclaimer" that parrots the jurisdictional statute. Section 1442(a)(1) allows removal for actions that "relat[e] to any act under color of [federal] office." 28 U.S.C. § 1442(a)(1). The State's disclaimer similarly turns on whether the claims "relat[e] to any federal health insurance and/or health benefits program, including . . . FEHBA." SAC ¶ 12. Because the federal officer removal statute and the State's disclaimer turn on whether the challenged conduct relates to Caremark's federal duties, the state court on remand would need to adjudicate the scope of Caremark's federal duties to determine the scope of the waiver. The disclaimer is improper

15

because, "if permitted, [it] would force [Caremark] to prove in state court that [it was] acting under the direction of the federal government"—the precise result section 1442(a)(1) prohibits. *Puerto Rico II*, 119 F.4th at 187–88 (citation omitted); *see Leite*, 749 F.3d at 1124; *Corley v. Long-Lewis*, 688 F. Supp. 2d 1315, 1335–36 (N.D. Ala. Jan. 28, 2010).

    3.    The State relies on a misreading of *California II*. But in that case, the Ninth Circuit *reversed* the district court's remand order and *rejected* California's attempt to disclaim jurisdiction. 2024 WL 3770326, at *1. Relying on an out-of-context quote from Judge Ikuta's concurrence, the State claims (at 13) that the Ninth Circuit held that "a more carefully drafted disclaimer would defeat removal." That argument fails. To the extent *California II* suggested an effective disclaimer was possible, the majority opinion was crystal-clear that such a disclaimer would need to "*explicitly* release" claims "*from rebate practices as they relate to FEHBA.*" 2024 WL 3770326, at *1 (second emphasis added). Here, the State did not release claims from Caremark's FEHBA-related rebate negotiations. Instead, it filed a new complaint broadly alleging that Caremark's rebating practices—which it carried out for FEHBA and non-FEHBA carriers—are unlawful. *See* SAC ¶¶ 9, 79, 82, 106, 114, 116, 156, 190, 198, 214, 282–84; Anderson Decl. ¶¶ 5–6.[4]

---

[4] The State overstates any differences between the *California II* majority and Judge Ikuta's concurrence. The majority stated that an effective disclaimer would need to eliminate federally related negotiations from the case. Judge Ikuta recognized that,

The State also says (at 16) that *California II* remanded for consideration of other federal-officer prongs. But the State does not challenge those elements absent its disclaimer, and this Court already ruled on them. Remand Order at *8, 13.

4.    In the SAC, the State raises a handful of additional allegations that purport to demonstrate that Caremark's rebate-negotiating conduct is divisible. The State alleges that Caremark "administer[s] rebates and pharmacy claims on a plan-by-plan basis," which "means that CVS Caremark . . . can identify and separate rebates and pharmacy claims attributable to FEHBA plans . . . from rebates and pharmacy-level claims attributable to other plans." SAC ¶ 30. The State therefore claims (at 10–11) that Caremark can "separate the rebates [it] receive[s] for federal health plans from the rebates [it] receive[s] for non-federal health benefit plans."

The State's new argument misses the point. Federal officer removal turns on the relationship "between the *charged conduct* and asserted official authority." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (emphasis added); *Puerto Rico II*, 119 F.4th at 192. As this Court explained, the "charged conduct" giving rise to removal is Caremark's rebate negotiations with manufacturers. Remand Order at *6–9; *see Puerto Rico II*, 119 F.4th at 190; *California II*, 2024 WL 3770326, at *1.

---

in a lawsuit challenging indivisible negotiations, such a disclaimer would waive the whole case.

Those negotiations occur between Caremark and manufacturers and result in Rebate Agreements governing the rebates the manufacturers will pay.  Anderson Decl. ¶ 4.

Claims-processing is entirely separate.  *Id.* ¶ 7.  After individual beneficiaries obtain pharmaceutical drugs pursuant to their benefits plans, pharmacies submit claims to Caremark for reimbursement.  SAC ¶¶ 46, 222.  Caremark adjudicates those claims and reimburses the pharmacies pursuant to separate agreements with the pharmacies and health plans.  *See id*; Anderson Decl. ¶ 7.  It is of course possible to separate payment information for individual claims, because each claim is submitted and processed individually.  But that is irrelevant because, as the State does not dispute, Caremark's manufacturer-facing *negotiations*—the conduct the State challenges—are collective.  Remand Order at *12.

## II.    Caremark Still Satisfies the Elements of Federal Officer Removal.

### A.    Caremark Acts Under a Federal Officer When It Negotiates Rebates for FEHBA Plans.

1.    The State does not (and cannot) dispute that Caremark acts under a federal officer when performing PBM services for its FEHBA clients.  The words "'acting under' are broad, and the Supreme Court has made clear that the statute must be liberally construed."  Remand Order at *5 (cleaned up).  A private party acts under a federal officer when it is "involved in an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Id.* (cleaned up).

18

The Court held that Caremark "acts under" a federal officer because Caremark helps assist, or carry out, OPM's statutory mandate to provide health benefits to federal employees. *Id.* at \*6–9. As the Court explained, OPM contracts with private FEHBA carriers to provide federal health benefits, and "OPM contemplates that the FEHBA carriers will utilize PBMs." *Id.* at \*6; *see Puerto Rico II*, 119 F.4th at 182 (OPM "assume[s] that PBMs will contract with FEHBA carriers and receive rebates"); Declaration of Michael Perry ("Perry Decl.") ¶ 8. OPM therefore imposes direct oversight and monitoring over Caremark's provision of PBM services for FEHBA carriers, including by issuing Carrier Letters establishing PBM Standards. *See* Remand Order at \*6 & n.1. OPM imposes further obligations on Caremark in its Standard Contract with FEHBA carriers, such as requiring Caremark to provide "pass-through transparent pricing," "credit to the Carrier either as a price reduction or by cash refund the value of all [rebates]," and comply with "disclosure requirements . . . regarding [Caremark's] formularies." *See id.* at \*6–8. The Standard Contract also empowers the OPM Office of Inspector General ("OPM OIG") to audit FEHBA carriers and Caremark, and OPM OIG has exercised its authority to audit Caremark, including Caremark's rebating practices. *Id.* at \*8; Perry Decl. ¶¶ 4–7. Thus, "Caremark's actions at issue in this case regarding its formulary and rebate practices were 'actions under' a federal officer, *i.e.*, OPM." Remand Order at \*9 (cleaned up).

19

The First Circuit agreed, holding that "[w]hen Caremark negotiates rebates on behalf of FEHBA carriers, it assists OPM in carrying out its official task of administering federal health benefits." *Puerto Rico II*, 119 F.4th at 190.

2.    The State contends (at 9) that its purported disclaimer undermines this element.  As explained, the disclaimer fails.  *Supra* pp.11–18.  In any event, no disclaimer would impact whether Caremark "acts under" federal officers.  The "acting under" requirement analyzes the "relationship" between the defendant and the federal officer.  *See* Remand Order at *5.  That relationship exists regardless of the lawsuit and any claims it may allege.  The "acting under" prong is therefore separate from the "causal connection" requirement, discussed below, which tests the connection between the removing party's relationship with the government and the challenged conduct.  *In re Commonwealth's Mot. to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015).

3.    The State also attempts (at 9–11) to undercut the Remand Order by relying on Caremark's three discovery responses, in which Caremark acknowledged that no federal officer "directed" Caremark to negotiate rebates for FEHBA and non-FEHBA plans "simultaneously," or to "appl[y]" negotiations or terms applicable to FEHBA plans to non-FEHBA plans.  Dkt. 167-2 at 18, 21, 24.

The State's argument misunderstands the law because Caremark is not required to show that OPM "directed" it to perform the precise challenged conduct.

Private parties "act under" federal officers whenever they assist the federal government "in fulfilling 'basic governmental tasks' that 'the Government itself would have had to perform' if it had not contracted with a private firm." *County of San Mateo v. Chevron*, 32 F.4th 733, 756 (9th Cir. 2022) (citation omitted); *see* Remand Order at *5; *Puerto Rico II*, 119 F.4th at 185–86. And section 1442(a)(1) applies to defendants that are "vested with discretion" regarding how to go about helping a federal superior carry out a duty or task. *See Goncalves*, 865 F.3d at 1248. Thus, the removing party "is not required to show that the complained-of conduct *itself* was at the behest of the federal government." *Mohr v. Trs. of Univ. of Pa.*, 93 F.4th 100, 104–05 (3d Cir. 2024) (cleaned up); *see Acker*, 527 U.S. at 432–33; *Plaquemines Parish v. BP Am. Prod.*, 103 F.4th 324, 334 (5th Cir. 2024); *Caris MPI v. UnitedHealthcare*, 108 F.4th 340, 347 (5th Cir. 2024); *Goncalves*, 865 F.3d at 1248. Caremark's admission that OPM did not "direct" it to negotiate rebates collectively therefore is irrelevant.

The State's argument also mischaracterizes Caremark's basis for removal. Caremark never claimed that OPM directed it to engage in collective rebate negotiations. Instead, Caremark argued—and the Court held—that Caremark acts under OPM when performing PBM services for FEHBA carriers. *See* Remand Order at *9; *Puerto Rico II*, 119 F.4th at 190; Perry Decl. ¶¶ 4–7. That Caremark's negotiations for FEHBA plans were inextricably intertwined with negotiations for

21

non-FEHBA plans is not the reason Caremark satisfies the "acting-under" element—it is a reason the lawsuit is related to Caremark's federal duties, and the reason the State cannot disclaim Caremark's federal conduct. *See* Remand Order at *12; *Puerto Rico II*, 119 F.4th at 191; *California II*, 2024 WL 3770326, at *2 (Ikuta, J., concurring); Anderson Decl. ¶¶ 4–6.

**B.    This Lawsuit Relates To Caremark's Federal Duties.**

As this Court held, this lawsuit has a causal connection to Caremark's federal work because the State claims that "PBMs artificially inflate" drug prices "by requiring drug manufacturers to pay rebates in exchange for preferred placement on the PBM's drug formulary," and Caremark undertook those rebate negotiations "collectively." Remand Order at *10. To establish a causal nexus, Caremark is not required to show that the lawsuit challenges "the very acts which the officer admits to have been done" under federal authority; it must only show that the challenged actions "occurred because of what [it] w[as] asked to do by the Government." *Id.* at *5 (citations omitted). Furthermore, removal is proper for actions "not just causally connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id.* at *6 (citation omitted).

"Because Caremark negotiates rebates collectively and does not have separate contracts for FEHBA plans and non-FEHBA plans, and because the determination of drug prices is regulated by OPM, . . . the conduct that the State challenges in the

22

instant case 'occurred because of what Caremark was asked to do by the Government.'" *Id.* at *10 (cleaned up). This Court stated that Caremark also "established the broader connection to or association with requirement," which independently satisfies this prong. *See id.* at *10 n.3.

The First Circuit similarly held that Puerto Rico's lawsuit challenging Caremark's rebate negotiations was "related to" Caremark's federal acts because "[w]hen Caremark negotiates rebates on behalf of FEHBA carriers, it assists OPM in carrying out its official task of administering federal health benefits." *Puerto Rico II*, 119 F.4th at 190; *see California II*, 2024 WL 3770326, at *1.

The State's only response (at 12–13) is to rely on its disclaimer. As explained, the State's disclaimer fails because the State challenges an indivisible course of negotiating conduct. *See supra* pp.11–18. But even if it were possible to pull apart this singular negotiation process (it is not), this element would still be met. To establish a causal nexus, Caremark need only demonstrate that the challenged conduct "occurred *while* [Caremark was] performing [its] official duties." *See DeFiore v. SOC LLC*, 85 F.4th 546, 557 (9th Cir. 2023). As the State does not dispute, Caremark simultaneously negotiates with manufacturers to obtain rebates that flow back to both its FEHBA and non-FEHBA clients. Anderson Decl. ¶¶ 4–6.

### C.    Caremark Has Colorable Federal Defenses.

As the State concedes (at 14), the colorable-federal-defense prong is a "low bar."  Caremark need only assert a defense that is not "immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous."  Remand Order at *13 (cleaned up).  The question is whether Caremark advanced a colorable federal defense, not whether the defense "will be successful."  *Id.* at *12.

This Court held that Caremark has a colorable defense under FEHBA's express preemption provision, which provides that "[t]he terms of any contract under [FEHBA] which relate to the nature, provision, or extent of coverage or benefits . . . shall supersede and preempt any State or local law . . . which relates to health insurance or plans."  5 U.S.C. § 8902(m).  The Court explained that "Caremark's rebate practices arguably relate to the FEHBA carrier clients' right to repayment for prescription drug benefits that they provided to their insureds," and that Caremark's formulary practices "arguably relate to the coverage or benefits that the FEHBA carrier clients provide."  Remand Order at *13; *see Puerto Rico II*, 119 F.4th at 190.

The State argues (at 14–15) that its disclaimer and jurisdictional discovery eliminate this defense.  But that argument fails for the reasons explained *supra* at pp.11–18, 20–22.

In a footnote, the State also asserts (at 15 n.5) that Caremark does not have a colorable federal defense, even as to its work for FEHBA carriers.  But the Court

24

already held that Caremark's preemption defense is colorable, that holding is law of the case, and the State does not even address the Court's ruling.

In any event, the State's arguments are meritless. The State claims (at 15 n.5) that Caremark's defense is not colorable because the FEHBA contract does not state that PBMs "must negotiate rebates," and because FEHBA only preempts state laws that "conflict" with federal law. The State is wrong on both counts. For one thing, OPM *does* "contemplate[] that the FEHBA carriers will utilize PBMs." *See* Remand Order at *6; *Puerto Rico II*, 119 F.4th at 182; Perry Decl. ¶ 8. And FEHBA preemption does not require a "conflict"; it applies to contract provisions that "relate to . . . payments with respect to benefits," a term the Supreme Court has interpreted broadly. *See Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 95–96 (2017).

Finally, the State raises no argument as to Caremark's separate colorable defense that this lawsuit presents an "unacceptable obstacle" to Caremark's ability to obtain rebates for FEHBA carriers. *See Chamber of Com. v. Bonta*, 62 F.4th 473, 486 (9th Cir. 2023). This action undermines a central purpose of FEHBA because the lawsuit will make it more difficult for FEHBA carriers to provide competitive health benefits. *See Nevils*, 581 U.S. at 96; Perry Decl. ¶ 8.[5]

---

[5] The State argues (at 17–20) that discretionary remand is inappropriate. In light of the Supreme Court's ruling in *Royal Canin U.S.A. v. Wullschleger*, 2025 WL 96212 (2025), the SAC is jurisdictionally relevant, so the discretionary analysis is moot.

25

## <u>CONCLUSION</u>

For these reasons, the Court should deny the State's motion to remand.

DATED:  Honolulu, Hawaiʻi, February 7, 2025.

<u>/s/ Douglas S. Chin</u>
DOUGLAS S. CHIN
JOHN W. KELLY
**STARN O'TOOLE MARCUS & FISHER**

ENU MAINIGI *(pro hac vice)*
CRAIG D. SINGER *(pro hac vice)*
R. KENNON POTEAT III *(pro hac vice)*
A. JOSHUA PODOLL *(pro hac vice)*
DANIEL DOCKERY *(pro hac vice)*
**WILLIAMS & CONNOLLY LLP**

Attorneys for Defendant
CAREMARKPCS HEALTH, L.L.C.