UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAI'I, EX REL. ANNE E. LOPEZ, ATTORNEY GENERAL;<br><br>        Plaintiff,<br><br>    vs.<br><br>CAREMARKPCS HEALTH, L.L.C., EXPRESS SCRIPTS, INC., OPTUMRX, INC.,<br><br>        Defendants. | CIV. NO. 23-00464 LEK-RT |

**ORDER GRANTING PLAINTIFF'S RENEWED MOTION TO REMAND**

On November 27, 2024, Plaintiff State of Hawai`i ("the State"), by and through Anne E. Lopez, Attorney General, filed its Renewed Motion to Remand ("Renewed Motion"). [Dkt. no. 167.] On February 7, 2025, Defendant CaremarkPCS Health, L.L.C. ("Caremark") filed its memorandum in opposition, and Defendant Express Scripts, Inc. ("Express Scripts") and Defendant OptumRx, Inc. ("OptumRx") each filed a joinder in the memorandum in opposition ("Express Scripts Opposition Joinder" and "OptumRx Opposition Joinder"). [Dkt. nos. 180, 181, 182.] On February 14, 2025, the State filed its reply in support of the Renewed Motion ("Reply"). [Dkt. no. 183.] This matter came on for hearing on February 28, 2025.

Caremark filed a Notice of Supplemental Authority on March 7, 2025. [Dkt. no. 187.] The State filed a response to

Caremark's notice on March 12, 2025, and Caremark filed an
opposition to the State's response on March 17, 2025. [Dkt.
nos. 191, 192.] As follows, the State's Renewed Motion is hereby
granted for failure to establish the requisite causal nexus.

## BACKGROUND

The State filed its original Complaint in the State of
Hawai`i Circuit Court of the First Circuit ("the state court")
on October 4, 2023, against Express Scripts, Caremark, and
OptumRx (collectively "Defendants"). See Notice of Removal of
Civil Action Under 28 U.S.C. §§ 1442 (a)(1) and 1446, filed
11/17/23 (dkt. no. 1) ("Notice of Removal"), at ¶ 1; see also
id., Declaration of C. Michael Heihre ("Heihre Removal Decl."),
Exh. E (copies of filings in the state court) at PageID.730-74
(Complaint). The State filed its First Amended Complaint on
November 6, 2023 ("Amended Complaint"),[1] and the State served the
Amended Complaint on Express Scripts on November 8, 2023. See
Notice of Removal at ¶ 2; see also Heihre Removal Decl., Exh. A
(Amended Complaint). Express Scripts removed the action based on

---

[1] The original version of the Amended Complaint was heavily
redacted. On August 13, 2024, this Court issued an entering
order granting Express Scripts and OptumRx's motion to seal
portions of the unredacted Amended Complaint ("8/13 EO"). [Dkt.
no. 139.] The unredacted Amended Complaint was filed under seal
on August 13, 2024, [dkt. no. 140,] and the version of the
Amended Complaint with the redactions approved in the 8/13 EO
was filed on August 19, 2024. [Dkt. no. 143-1.]

the federal officer removal statute, Title 28 United States Code Section 1442(a)(1). See Notice of Removal at ¶¶ 16-18. Caremark filed a Supplemental Notice of Removal on November 17, 2023. [Dkt. no. 8.] Caremark also invoked federal officer removal. [Id. at ¶ 4.]

On November 29, 2023, the State filed its Motion to Remand ("Original Motion"), and, on May 1, 2024, this Court issued the Order Denying Plaintiff's Motion to Remand ("5/1/24 Order"). [Dkt. nos. 29, 85.[2]] In the 5/1/24 Order, this Court noted that the denial of the Original Motion was based on the then-existing record and granted leave to file a renewed motion for remand if appropriate based on subsequent developments of the record. See 5/1/24 Order, 2024 WL 1907396, at *14. Relevant to the Renewed Motion, this Court found that Caremark was "acting under" the Office of Personnel Management ("OPM") when Caremark was acting on behalf of its Federal Employees Health Benefits Act ("FEHBA") clients. Id. at *8-9. Further, this Court ruled that the State's attempted waiver in the Amended Complaint[3] was ineffective as to Caremark because the State

---

[2] The 5/1/24 Order is also available at 2024 WL 1907396.

[3] The attempted waiver in the Amended Complaint stated: "The State is not seeking relief relating to any federal program (e.g., Medicaid, Medicare, TRICARE, FEHBA) or any contract related to a federal program." [Amended Complaint at ¶ 22.]

failed to "expressly carve out certain factual bases, whether by
time span or location, such that any alleged injury caused by
Caremark could not have happened under OPM's direction . . . ."
Id. at *11 (citing O'Shea v. Asbestos Corp., Case No. 3:19-cv-
127, 2019 WL 12345572, at *7 (D.N.D. Dec. 13, 2019)). This Court
relied upon Caremark's representation that it negotiates rebates
for its federal clients and non-federal clients collectively,
and thus the violation of Hawai`i Revised Statutes Chapter 480
alleged by the State in this case could have occurred during
negotiations conducted under OPM's direction. Id. at *12.
Therefore, the Amended Complaint did not negate the causal nexus
between Caremark's actions taken pursuant to a federal officer's
directions, and the State's claims.[4] Id.

---

[4] In contrast, this Court concluded that, because Express
Scripts's causal nexus argument focused on the alleged injuries
asserted by the State, paragraph 22 of the Amended Complaint
negated the causal nexus that Express Scripts established. See
5/1/24 Order, 2024 WL 1907396, at *12. Thus, Express Scripts's
removal of the action was improper. Id. Although Express Scripts
disagrees with this Court's ruling in the 5/1/24 Order and
reserves its rights to appeal or seek other recourse based on
subsequent developments, [Express Scripts Opp. Joinder at 2-3,]
"Express Scripts does not submit a memorandum of law in
opposition to the State's 'renewed' remand arguments based on
factual rather than facial challenges directed solely to
Defendant CaremarkPCS Health, L.L.C.," [id. at 3].

On November 27, 2024, the State filed a redacted version of its Second Amended Complaint, [dkt. no. 166,[5]] and its Renewed Motion. The State brings the following claims: a deceptive acts and practices claim under Hawai`i Revised Statutes Section 480-2 ("Count I"); an unfair acts and practices claim under Section 480-2 ("Count II"); a claim for treble damages pursuant to Section 480-2 and Hawai`i Revised Statutes Section 480-14 ("Count III"); and an unfair methods of competition claim under Section 480-2 ("Count IV").

In the Renewed Motion, the State argues the facts that have developed since the 5/1/24 Order was issued, together with the express waiver pled in the Second Amended Complaint, preclude the exercise of federal officer removal jurisdiction pursuant to Section 1442(a)(1). See Renewed Motion, Mem. in Supp. at 2; see also Second Amended Complaint at ¶ 12.

The State's current waiver states:

> In this action, the State does not make any claims regarding or seek recovery for any acts or practices relating to any federal health insurance and/or health benefits program, including but not limited to Medicaid, Medicare, TRICARE, and/or Federal Health Benefits Act ("FEHBA") plans. All claims asserted herein relate exclusively to non-federal health insurance and/or health benefits programs.

---

[5] On December 2, 2024, the State filed, under seal, an unredacted version of its Second Amended Complaint. [Dkt. no. 169.] All citations to the Second Amended Complaint in the instant Order refer to the redacted version.

[Second Amended Complaint at ¶ 12.]

According to the Second Amended Complaint, to the extent that Defendants "negotiate the terms of contracts for both federal and non-federal health benefit programs together, Defendants do so for their own convenience and not as the result of any direction by the federal government or any federal officer." [Id. at ¶ 28.]

> Further, CVS Caremark and Express Scripts administer rebates and pharmacy claims on a plan-by-plan basis. This means that CVS Caremark and Express Scripts can identify and separate rebates and pharmacy claims attributable to FEHBA plans and TRICARE, respectively, from rebates and pharmacy-level claims attributable to other plans, including plans in and for the State of Hawai`i. The U.S. Office of Personnel Management ("OPM"), which sponsors FEHBA plans, contracts with health benefit plans (e.g., Blue Cross Blue Shield, Kaiser Permanente). It does not contract with [pharmacy benefit managers ("PBMs")] or require its health benefit plans to contract with PBMs. In the event health benefit plans do contract with PBMs, OPM requires them to ensure that PBMs adhere to certain transparency standards . . . , including transparently disclosing and passing through rebates and other fees from manufacturers to the health benefit plans. But OPM imposes these standards only on FEHBA plans, not the plans that are the subject of this Complaint, which are exclusively non-federal health insurance and/or health benefits programs.

[Id. at ¶ 30.] Specifically, the State alleges that OPM does not dictate or limit Caremark's negotiation or acceptance of rebates and designation of formularies for non-federal health benefit plans. Further, the State alleges OPM does not dictate or limit

Caremark's pharmacy interactions relating to non-federal health
benefit plans, including determining which pharmacy must fill
prescriptions for consumers, negotiating reimbursement rates
with pharmacies, and reimbursing pharmacies. [Id. at ¶ 31.]

In the Renewed Motion, the State emphasizes that, in
jurisdictional discovery, Caremark admitted:

- "no federal officer or federal agency has directed that Rebate
  Negotiations applicable to Federal Health Benefits Programs
  must be conducted simultaneously with Rebate Negotiations
  applicable to Non-Federal Health Benefit Programs";
  [Renewed Motion, Mem. in Supp., Exh. A (Caremark's
  supplemental objections and discovery responses) at pg. 18
  (supplemental response to Request for Admission No. 1);]

- "no federal officer or federal agency has directed that Rebate
  Negotiations applicable to Federal Health Benefit Programs
  must be applied to Non-Federal Health Benefit Programs";
  [id. at pg. 21 (supplemental response to Request for
  Admission No. 2);] and

- "no federal officer or federal agency has directed that terms
  applicable to Federal Health Benefit Programs must be
  applied to Non-Federal Health Benefit Programs," [id. at
  pg. 24 (supplemental response to Request for Admission
  No. 3)].

The State also argues this Court should consider the
Ninth Circuit's recent decision in California v. CaremarkPCS
Health LLC, No. 23-55597 ("California v. Caremark"), 2024 WL
3770326 (9th Cir. Aug. 13, 2024). See Renewed Motion, Mem. in
Supp. at 12-13. Caremark argues California v. Caremark and
Puerto Rico v. Express Scripts, Inc. ("Puerto Rico v. Express
Scripts"), 119 F.4th 174 (1st Cir. 2024), support its position
that the Renewed Motion should be denied. See Mem. in Opp. at 1-

7

2. Caremark also argues the jurisdictional discovery that the State relies upon is irrelevant to the existence of federal officer removal jurisdiction, and the State's disclaimer in the Second Amended Complaint is substantively identical to the disclaimer in the Amended Complaint, which this Court ruled was ineffective as to Caremark. See id. at 1.

## DISCUSSION

In the 5/1/24 Order, this Court noted:

> An entity seeking removal under § 1442(a)(1) bears the burden of showing "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quoting Jefferson Cty. v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)).

5/1/24 Order, 2024 WL 1907396, at *4 (quoting Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1244 (9th Cir. 2017)). The critical issues in the Renewed Motion are: whether there is a causal nexus between Caremark's actions and the State's claims; and, if Caremark has established a causal nexus, whether the disclaimer in the Second Amended Complaint negated the causal nexus. However, before analyzing these issues, this Court notes the following distinction between Ninth Circuit case law regarding federal officer removal jurisdiction and case law from other circuits.

## I.    "Causal Nexus" vs. "Connection or Association"

In a similar insulin price-inflation action against PBMs and pharmaceutical manufacturers, the First Circuit described the elements necessary for federal officer removal jurisdiction as "(1) 'that it was acting under a federal officer's authority,' (2) 'that the charged conduct was carried out for or relating to the asserted official authority,' and (3) 'that it will assert a colorable federal defense to the suit.'" Puerto Rico v. Express Scripts, 119 F.4th at 185 (quoting Moore v. Elec. Boat Corp., 25 F.4th 30, 34 (1st Cir. 2022)).

> "Relating to," as it is used in § 1442(a)(1), means "in 'association with or connection with.'" [Moore, 25 F.4th at] at 35 n.4 (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992)). Congress amended § 1442(a)(1) to add "or relating to" because it wished to "broaden the universe of acts that enable Federal officers to remove [suits] to Federal court." H.R. Rep. No. 112-17, at 6 (2011).

Id. at 186 (second alteration in Puerto Rico v. Express Scripts).

Similarly, in a case alleging pharmacies and opioid manufacturers and distributers were responsible for the opioid epidemic, the Fourth Circuit described the elements necessary for federal officer removal jurisdiction as the defendants: "(1) acted under the direction of a federal officer; (2) possess

a colorable federal defense; and (3) engaged in government-directed conduct that was causally related to the plaintiff's claims." <u>Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.</u>, 996 F.3d 243, 247 (4th Cir. 2021) (citing <u>Sawyer v. Foster Wheeler LLC</u>, 860 F.3d 249, 254 (4th Cir. 2017)).

> "To satisfy the third prong [of the federal official removal statute], the conduct charged in the Complaint need only 'relate to' the asserted official authority." <u>[Mayor & City Council of] Baltimore [v. BP P.L.C.]</u>, 952 F.3d [452,] 466 [(4th Cir. 2020)].[6] "That is, there must be 'a connection or association between the act in question and the federal office.'" <u>Id.</u> (quoting <u>Sawyer</u>, 860 F.3d at 258). Generally, "[w]e credit Defendants' theory of the case when determining whether" there is such a connection or association. <u>Isaacson [v. Dow Chem Co.]</u>, 517 F.3d [129,] 137 [(2d Cir. 2008)] (citing <u>Jefferson Cnty. v. Acker</u>, 527 U.S. 423, 432, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)). As we explained in <u>Sawyer</u>, this "connection or association" standard is broader than the **old "causal nexus" test that we abandoned after the Removal Clarification Act of 2011**, Pub. L. No. 112-51, 125 Stat. 545, expanded § 1442(a)(1) by inserting "or relating to" into the third requirement for removal. <u>See</u> 860 F.3d at 258 (explaining the shift from "for a[n] act under color of office" to "for or relating to any act under color of [federal] office" (alterations in original)).

---

[6] The Fourth Circuit's opinion in <u>Mayor & City Council of Baltimore</u> was vacated on other grounds and the case remanded. <u>See BP P.L.C. v. Mayor & City Council of Baltimore</u>, 593 U.S. 230 (2021).

Id. at 256 (some alterations in Arlington Cnty.) (emphasis added).[7]

The Ninth Circuit, however, has not abandoned the causal nexus test. Rather, the Ninth Circuit reads the "'causal nexus' test as incorporating the 'connected or associated with' standard reflected in Congress's 2011 amendment and the Supreme Court's decisions." DeFiore v. SOC LLC, 85 F.4th 546, 557 n.6 (9th Cir. 2023) (citing Goncalves, 865 F.3d at 1244-45). This reading appears to be inconsistent with decisions, such as Arlington County and Puerto Rico, that interpret the "connected or associated with" standard as broader than the "causal nexus" test. Ninth Circuit case law imposing a casual nexus requirement is binding upon this Court, even though other Circuit Courts have interpreted Section 1442(a)(1) differently. Cf. Benham v. United States, Cr. No. 20-00075-HG-1, 2022 WL 4585713, at *3 (D. Hawai`i Sept. 28, 2022) ("The Ninth Circuit Court of Appeals decision in Lopez is binding precedent for this Court, although other Circuit Courts have reached different conclusions."

---

[7] The case cited by Caremark as post-hearing supplemental authority, see dkt. no. 187, also relied upon the "related to" version of the requirement. See Maryland v. 3M Co. ("Maryland v. 3M"), 130 F.4th 380, 389 (4th Cir. 2025) ("To satisfy the third element under the federal officer removal statute, often referred to as the nexus or connection requirement, a defendant must show it is being sued for an act or acts that it claims were done under — or related to acts done under — federal authority." (citation and internal quotation marks omitted)).

(comparing United States v. Lopez, 998 F.3d 431 (9th Cir. 2021),
with United States v. Pulsifer, 39 F.4th 1018 (8th Cir. 2022);
United States v. Pace, --- F.4th ----, 2022 WL 4115728 (7th Cir.
2022))).[8] Thus, the Court will not apply out-of-circuit case law
applying the connected or associated with standard in the
federal officer removal jurisdiction analysis here.

## II.  **Causal Nexus Analysis**

Next, this Court turns to the issue of what is
necessary to establish a causal nexus. The Ninth Circuit has
recently described Section 1442(a)(1) as requiring "a causal
nexus between **federally directed conduct** and [the plaintiff's]
claims." Doe v. Cedars-Sinai Health Sys., 106 F.4th 907, 913
(9th Cir. 2024) (emphasis added). During the hearing on the
Renewed Motion, Caremark argued the Cedars-Sinai description of
the causal nexus requirement is inapplicable to this case
because federal direction of the specific conduct at issue is
not required where the defendant was performing a task that the
federal government would have been required to perform itself.
See Transcript of Proceedings (2/28/25 hrg. on the Renewed
Motion), filed 3/6/25 (dkt. no. 186), at 6-7. Caremark argued
that, because the conduct at issue in this case occurred while

---

[8] The United States Supreme Court later abrogated Lopez when
it affirmed the Eighth Circuit's opinion in Pulsifer. See
Pulsifer v. United States, 601 U.S. 124 (2024).

Caremark was performing a task that the federal government would otherwise have been required to perform, "Caremark just needs to show it helps OPM perform federal tasks and that OPM provides guidelines and oversight over that work." [Id. at 6.]

As noted in the 5/1/24 Order, a "causal nexus - can be established through a showing that: 1) the party's actions at issue in the case were '"actions under" a federal officer'; and 2) there was a causal connection between those actions and the plaintiff's claims." 2024 WL 1907396, at *5 (quoting Goncalves, 865 F.3d at 1244). Caremark's argument during the hearing on the Renewed Motion refers to the "acting under" requirement of the causal nexus analysis. In Goncalves, the Ninth Circuit stated:

> For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to **assist,** or to help **carry out,** the duties or tasks of the federal superior." [Watson v. Phillip Morris Cos., 551 U.S. 142,] 152, 127 S. Ct. 2301 [(2007)]. The "relationship typically involves 'subjection, guidance, or control,'" but it must go beyond simply complying with the law, even if the laws are "highly detailed" and thus leave the entity "highly regulated." Id. at 151–53, 127 S. Ct. 2301 (citation omitted).

865 F.3d at 1245.

Even where the "acting under" requirement of the causal nexus analysis is met, a defendant must also satisfy the causal connection requirement.

> [T]he "hurdle erected by [the causal-connection] requirement is quite low." Isaacson, 517 F.3d at

13

> 137; see also Maryland v. Soper, 270 U.S. 9, 33,
> 46 S. Ct. 185, 70 L. Ed. 449 (1926) ("[T]he
> statute does not require that the prosecution
> must be for the very acts which the officer
> admits to have been done by him under federal
> authority. It is enough that his acts or his
> presence at the place in performance of his
> official duty constitute the basis, though
> mistaken or false, of the state prosecution.").
> The [defendant asserting federal officer removal
> jurisdiction] need show only that the challenged
> acts "occurred **because of** what they were asked to
> do by the Government." Isaacson, 517 F.3d at 137.

Id. at 1244-45 (some alterations in Goncalves).

This Court does not read the Cedars-Sinai description of Section 1442(a)(1) as requiring "a causal nexus between **federally directed conduct** and [the plaintiff's] claims," 106 F.4th at 913, as inconsistent with the Goncalves description of the causal nexus requirement. Rather, the Cedars-Sinai description appears to be an attempt to describe the two-part causal nexus requirement in one brief statement. However, even if Cedars-Sinai and Goncalves do set forth two distinct iterations of the causal nexus requirement, under either analysis, remand is required.

The record developed in connection with the State's Original Motion showed that: OPM contemplated that the FEHBA carriers OPM contracts with would utilize the services of PBMs like Caremark; OPM's standard contract that it enters into with a private carrier to provide health insurance to federal employees includes various requirements that apply if the

carrier utilizes a PBM; and among the requirements imposed upon

any PBM used by an FEHBA carrier are provisions affecting

rebates and formularies. See 5/1/24 Order, 2024 WL 1907396, at

*6-8. There are no federal regulations addressing an OPM

contractor's use of PBMs. The only indication of federal

direction of or control over an OPM contractor's use of a PBM is

the standard contract. Based on the foregoing, this Court

concludes that OPM permits, but does not require, FEHBA carriers

to utilize PBMs.

Where an FEHBA carrier does utilize a PBM, the PBM is

required

> to provide pass-through transparent pricing based
> on the PBM's cost for drugs (as described below)
> in which the Carrier receives the value of the
> PBM's negotiated discounts, **rebates**, credits or
> other financial benefits.
>
>> (i)  The PBM shall charge the Carrier no
>> more than the amount it pays the pharmacies
>> in its retail network for brand and generic
>> drugs plus a dispensing fee.
>>
>> (ii) The PBM shall charge the Carrier the
>> cost of drugs at mail order pharmacies based
>> on the actual cost, plus a dispensing fee.
>> Costs shall not be based on industry
>> benchmarks; for example, Average Acquisition
>> Cost (AAC) or Wholesale Acquisition Cost
>> (WAC).
>>
>> (iii) The PBM, or any other entity that
>> negotiates and collects Manufacturer
>> Payments allocable to the Carrier **agrees to
>> credit to the Carrier either as a price
>> reduction or by cash refund the value all
>> Manufacturer Payments properly allocated to**

> **the Carrier**. Manufacturer Payments are any
> and all compensation, financial benefits, or
> remuneration the PBM receives from a
> pharmaceutical manufacturer, including but
> not limited to, discounts; credits; **rebates**,
> regardless of how categorized; market share
> incentives, chargebacks, commissions, and
> administrative or management fees.
> Manufacturer payments also include any fees
> received for sales of utilization data to a
> pharmaceutical manufacturer.

Id. at *7 (emphases in 5/1/24 Order) (quoting Federal Employees

Health Benefits Program Standard Contract for Experience-Rated

Health Maintenance Organization Carriers (2019) ("Standard

Contract") at I-17, § 1.28(a)(1)).

The State alleges Defendants are retaining some of the

rebates they collect from drug manufacturers, *i.e.* Defendants

are failing to provide pass-through pricing. See Second Amended

Complaint at ¶¶ 45, 71, 78, 121-23; see also id. at ¶ 179

("Defendants always retain some portion of the fees they

negotiate from manufacturers."). The alleged retention of

rebates is one of the bases of the State's claims. Count I

alleges:

> 254. Since in or around 2012, if not
> earlier, Defendants have engaged in deceptive
> acts or practices in trade or commerce in
> violation of [Hawai`i Revised Statutes] § 480-2
> by, among other things:
>
>> a.    misrepresenting that Defendants
>>       function to lower the cost of
>>       prescription drugs, including through
>>       the use of rebates and other are fees

from manufacturers, as described in
Paragraphs 63-72 and 183-190;

b.   representing that Defendants function
to lower prescription drug costs,
including through the use of rebates
and other fees from manufacturers,
while failing to disclose that, among
other things:

i.   Defendants' practices artificially
inflate WAC prices for brand-name
prescription drugs as described in
Paragraphs 63-72 and 183-190;

ii.   a significant portion of WAC
prices (*e.g.*, 30% or more) is
attributable to rebates and other
fees from manufacturers as
described in Paragraphs 63-72 and
183-190;

iii.  Defendants profit from rebates and
other fees from manufacturers as
described in Paragraphs 63-72 and
183-190;

iv.  the high WAC price/high rebate
system Defendants engineered will
result in a substantial number of
consumers paying higher out-of-
pocket costs as described in
Paragraphs 63-72 and 183-190.

[Id. at pgs. 106-07.] Count II alleges:

265. Defendants engage in trade and commerce
by administering prescription drug benefits for
Hawai`i consumers as described in Paragraphs 53-
62.

266. Since in or around 2012, if not
earlier, Defendants have engaged in unfair acts
or practices in trade or commerce in violation of
[Hawai`i Revised Statutes] § 480-2 by engaging in
a scheme to artificially inflate WAC prices for
brand-name prescription drugs to allow Defendants

> to extract higher fees as explained in
> Paragraphs 73-129.

[Id. at pg. 112.] Count III alleges:

> 272. Since sometime in or around 2012, if
> not earlier, Defendants have engaged in unfair
> and deceptive acts or practices in trade or
> commerce in violation of [Hawai`i Revised
> Statutes] § 480-2 by engaging in a scheme to
> artificially inflate WAC prices for brand-name
> prescription drugs to allow Defendants to extract
> higher fees as described in Paragraphs 73-129.

[Id. at pg. 113.]

A.    ***Cedars-Sinai* Analysis**

To the extent that that the Ninth Circuit requires "a
causal nexus between federally directed conduct and [the
State's] claims," see Cedars-Sinai, 106 F.4th at 913, that
requirement is not met here. As previously stated, OPM
contemplates that its FEHBA carriers will utilize PBMs like
Caremark and that the PBMs will negotiate rebates from
pharmaceutical manufacturers. See 5/1/24 Order, 2024 WL 1907396,
at *6-7. However, when an FEHBA carrier utilizes a PBM, OPM
requires that the PBM pass the value of any "compensation,
financial benefit[], or remuneration," including the rebate,
through to the FEHBA carrier. See id. at *7 (quoting Standard
Contract at I-17, § 1.28(a)(1)). Caremark represents that it
negotiates rebates collectively for federal health benefit
programs and non-federal health benefit programs. See Caremark's

Supplemental Notice of Removal ("Suppl. Notice of Removal"),
filed 11/17/23 (dkt. no. 8), at ¶ 13.

There is a nexus between conduct that Caremark engages
in on behalf of the FEHBA carriers, *i.e.*, the negotiation of
rebates from drug manufacturers, and the State's claims based
upon the allegation that Caremark improperly retains a portion
of the rebates. However, OPM does not direct Caremark to
negotiate rebates for FEHBA plans collectively with non-FEHBA
plans, nor does OPM direct Caremark to apply any rebate
applicable to FEHBA plans to any non-FEHBA plans. See Renewed
Motion, Mem. in Supp., Exh. A (Caremark's supplemental
objections and discovery responses) at pg. 18 (supplemental
response to Request for Admission No. 1); id. at pg. 21
(supplemental response to Request for Admission No. 2). Caremark
had contractual obligations regarding non-federal plans separate
from its contractual obligations regarding federal plans. The
fact that Caremark, without any requirement or direction by a
federal officer, chose to satisfy those obligations
simultaneously did not render Caremark a federal officer in its
negotiations regarding non-federal plans. Thus, there is no
"causal nexus between **federally directed conduct** and [the
State's] claims." See Cedars-Sinai, 106 F.4th at 913 (emphasis
added).

Because Caremark does not satisfy the causal nexus requirement under the Cedars-Sinai analysis, it is not necessary to address whether paragraph 12 of the Second Amended Complaint negates the causal nexus.

**B.    *Goncalves* Analysis**

Even if the Goncalves causal nexus analysis is distinct from the Cedars-Sinai causal nexus analysis, remand would still be required. In the 5/1/24 Order, this Court found that "Caremark's actions at issue in this case regarding its formulary and rebate practices were '"actions under" a federal officer,' *i.e.* OPM." 2024 WL 1907396, at *9 (quoting Goncalves, 865 F.3d at 1244). For the reasons stated in the 5/1/24 Order, see id. at *6-9, this Court finds that the Second Amended Complaint adequately alleges that Caremark was "acting under" OPM because Caremark was "involved in an effort to assist, or to help carry out, the duties or tasks of [OPM]." See Goncalves, 865 F.3d at 1245 (emphases, citation, and internal quotation marks omitted).

The causal connection requirement of the Goncalves analysis is a low hurdle to overcome. See id. at 1244 ("the hurdle erected by the causal-connection requirement is quite low" (brackets, citation, and internal quotation marks omitted). Caremark "need show only that the challenged acts occurred **because of** what they were asked to do by the Government." See

20

id. at 1245 (citation and internal quotation marks omitted). The
challenged acts in this case involve rebate and formulary
practices. Caremark has argued "[t]he rebates that the State
challenges fall within OPM's definition of 'Manufacturer
Payments,'" [Suppl. Notice of Removal at ¶ 33,] and Caremark
argued its "FEHBA clients expect and desire that Caremark can
and will obtain competitive rebates to offset the costs of
pharmaceutical drugs," [id. at ¶ 14]. According to Caremark, its
"FEHBA clients would not contract with a PBM that was unable or
unwilling to obtain discounts in the form of Manufacturer
Payments, like rebates." [Id.] For purposes of the Renewed
Motion, this Court credits Caremark's theory that its rebate
negotiation practices are an integral part of the prescription
drug coverage that FEHBA carriers provide. See Acker, 527 U.S.
at 432 ("[W]e credit the [defendants'] theory of the case for
purposes of both elements of our jurisdictional inquiry and
conclude that the [defendants] have made an adequate threshold
showing that the suit is 'for a[n] act under color of office.'"
(some alterations in Acker) (quoting 28 U.S.C. § 1442(a)(3))).[9]

---

[9] Acker has been superseded by statute on other grounds.
See, e.g., Silver Peaks, LLC v. Caremore Health Plan, Case
No. 2:21-cv-05355-FLA(PDx), 2021 WL 3883911, at *2 (C.D. Cal.
Aug. 31, 2021) (citing Sawyer v. Foster Wheeler LLC, 860 F.3d
249, 258 (4th Cir. 2017)).

It is clear that Caremark's negotiation of rebates for
the prescription drug coverage provided under the FEHBA
carriers' plans occurred because of what OPM asked those FEHBA
carriers to do. However, the State's claims in this case "relate
exclusively to non-federal health insurance and/or health
benefits programs." [Second Amended Complaint at ¶ 12.] Since
the outset of this case, Caremark has asserted that their rebate
agreements with drug manufacturers "are structured to cover a
range of different clients and different formulary
possibilities, including standard and custom formularies," and
therefore, "the same manufacturer-PBM contracts that governed
rebates paid by manufacturers in connection with FEHBA plans
also governed rebates paid in connection with non-FEHBA plans."
See Suppl. Notice of Removal at ¶ 13. Because the rebates are
negotiated collectively, Caremark contends the negotiation of
rebates affecting non-FEHBA plans also occur because of what OPM
asked Caremark's FEHBA carrier clients to do. This Court
accepted Caremark's position in connection with the Original
Motion and concluded that Caremark established the causal
connection requirement of the causal nexus analysis. See 5/1/24
Order, 2024 WL 1907396, at *10. Further, although the State's
Amended Complaint limited the relief the State sought to relief
regarding non-federal programs, the State's disclaimer did not

necessarily preclude claims based on federal programs. <u>See</u>
Amended Complaint at ¶ 22.

However, since the Original Motion ruling,
jurisdictional discovery reveals that OPM neither directs nor
requires Caremark to negotiate rebates for FEHBA plans
collectively with non-FEHBA plans. <u>See</u> Renewed Motion, Mem. in
Supp., Exh. A (Caremark's supplemental objections and discovery
responses) at pg. 18 (supplemental response to Request for
Admission No. 1); <u>id.</u> at pg. 21 (supplemental response to
Request for Admission No. 2). Further, the current and revised
disclaimer in the Second Amended Complaint expressly limits the
instant case to claims based upon non-federal programs. <u>See</u>
Second Amended Complaint at ¶ 12. In light of the more carefully
drafted disclaimer and Caremark's admissions, it is clear that
the challenged acts in this case – Caremark's rebate practices
affecting non-federal plans – did not occur because of what OPM
asked Caremark's FEHBA carrier clients to do. In sum, Caremark
has failed to establish the causal connection requirement of the
<u>Gonsalves</u> causal nexus analysis.

Because Caremark does not satisfy the causal nexus
requirement under the <u>Gonsalves</u> analysis, it is not necessary to
address whether paragraph 12 of the Second Amended Complaint
negates the causal nexus.

23

III. **Disclaimer**

Even if Caremark had established a causal nexus, paragraph 12 of the Second Amended Complaint negates the causal nexus. In the 5/1/24 Order, the following analysis was relied upon:

Courts have frequently analyzed purported waivers in § 1442 removal cases, with the waivers generally falling into one of four categories:

(1) Express claim waivers: the waiver clearly carves out certain factual bases, whether by time span or location, such that any alleged injury could not have happened under the direction of a federal officer. E.g., Fisher [v. Asbestos Corp., No. 2:14-cv-02338-WGY-(FFMx)] 2014 WL 3752020, at *4 [(C.D. Cal. July 30, 2014)].

(2) Ambiguous waivers: the waiver was insufficiently comprehensive or subject to conflicting interpretations in light of other allegations, leaving some claims that gave rise to a government contractor defense. E.g., Despres v. Ampco-Pittsburgh Corp., 577 F. Supp. 2d 604, 608 (D. Conn. 2008) ("Plaintiffs in this case have not excluded from their claims against [defendant] all instances of asbestos exposure as a result of [defendant's] work on behalf of the Navy. Yet, Plaintiffs maintain that they have waived their federal claims. Plaintiffs cannot have it both ways.")

(3) Overbroad waivers: the waiver attempted to carve out factual bases giving rise to a federal defense, but the complaint contained allegations based solely on facts giving rise to a federal defense. E.g., In re Asbestos Products Liab.

> Litig. (No. VI), 770 F. Supp. 2d 736,
> 741-42 (E.D. Pa. 2011) ("While
> Plaintiffs purport to exclude any
> claims against Defendant 'caused by the
> acts or omissions of defendants
> committed at the specific and proven
> direction of an officer of the United
> States government acting in his
> official capacity,' the only claims
> alleged against Defendant arises from
> exposure on U.S. Naval ships at U.S.
> Naval shipyards.")
>
>     (4) Jurisdictional waivers: the waiver was
>         designed to circumvent § 1442 through
>         "artful pleading" on technicalities
>         rather than to disclaim factual
>         allegations giving rise to a federal
>         defense. E.g., McMann v. Air & Liquid
>         Sys. Corp., No. 2:14-cv-281, 2014 WL
>         1794694 (W.D. Wash. May 6, 2014) (in
>         which plaintiffs filed a "disclaimer of
>         any claims subject to a government
>         contractor defense under Boyle," and
>         the court found the disclaimer
>         ineffective).
>
> Ambiguous, overbroad, and jurisdictional waivers
> are routinely and uniformly found insufficient to
> support remand, while express claim waivers have
> almost always been found sufficient to eliminate
> the factual basis of a federal defense so that
> remand is appropriate.

2024 WL 1907396, at *11 (some alterations in 5/1/24 Order)

(quoting O'Shea v. Asbestos Corp., Case No. 3:19-cv-127, 2019 WL

12345572, at *7 (D.N.D. Dec. 13, 2019)). Based on the O'Shea

analysis, this Court ruled that "to plead an effective waiver,

the State was required to expressly carve out certain factual

bases, whether by time span or location, such that any alleged

injury caused by Caremark could not have happened under OPM's

direction . . . ." Id.; accord California v. Caremark, 2024 WL
3770326, at *1 (reversing the district court's order granting
the plaintiff's motion to remand and remanding the case for the
district court for further proceedings, finding that "Caremark
and Express Scripts correctly point out that the disclaimer
fails to **explicitly** release claims or possible recovery from
rebate practices as they relate to FEHBA and TRICARE. Thus, as
written, California's disclaimer does not necessarily defeat
removal, because the rebate negotiations remain 'causally
connected to the dispute.'" (quoting Goncalves, 865 F.3d at
1244)).

       Although Puerto Rico v. Express Scripts was not
relevant to the causal nexus analysis, see *supra* Discussion
Section I, it is relevant to the disclaimer analysis because the
First Circuit's disclaimer analysis cited this Court's analysis
based on O'Shea. See Puerto Rico v. Express Scripts, 119 F.4th
at 187 ("[D]isclaimers that 'clearly carve[] out certain factual
bases, whether by time span or location, such that any alleged
injury could not have happened under the direction of a federal
officer' will prevent removal." (some alterations in Puerto Rico
v. Express Scripts) (quoting 5/1/24 Order, 2024 WL 1907396, at
*11)). In Puerto Rico v. Express Scripts, the First Circuit
stated:

To defeat removal, an express disclaimer must "explicitly renounce[] claims" "upon which federal officer removal was based." Batchelor v. Am. Optical Corp., 185 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2016) (first quoting Hayden v. 3M Co., No. 15-2775, 2015 WL 4730741, at *3 (E.D. La. Aug. 10, 2015); and then quoting Dougherty [v. A O Smith Corp., Civil Action No. 13-1972-SLR-SRF], 2014 WL 3542243, at *10 [(D. Del. July 16, 2014)]). If a plaintiff renounces such claims, then a defendant is not entitled to "a federal forum" in which "to raise a defense arising out of his official duties," [Arizona v.] Manypenny, 451 U.S. [232,] 241, 101 S. Ct. 1657 [(1981)], "because such a defense pertains to claims that simply do not exist," Batchelor, 185 F. Supp. 3d at 1364 (internal quotation marks and citation omitted). Accordingly, a valid disclaimer must eliminate **any** basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority. . . .

. . . For instance, consider a plaintiff who disclaims any claims that arise from a location owned and operated by the federal government. The plaintiff then sues a defendant for the defendant's conduct on private property divorced from the work that it performed for a federal officer. See Dougherty, 2014 WL 3542243, at *1. The defendant thus could not raise a colorable federal defense arising from its private conduct, so § 1442(a)(1) would not be a proper basis for removal. See Fisher v. Asbestos Corp., No. 2:14-cv-2338, 2014 WL 3752020, at *3 (C.D. Cal. July 30, 2014); Batchelor, 185 F. Supp. 3d at 1364-65.

119 F.4th at 187 (first alteration in Puerto Rico v. Express Scripts).

The current disclaimer in the Second Amended Complaint is far more carefully drafted than the attempted disclaimer in

the Amended Complaint. While the attempted disclaimer in the
Amended Complaint focused on the relief sought by the State, see
Amended Complaint at ¶ 22, the current disclaimer limits the
State's claims and recovery to non-federal health insurance and
non-federal benefits programs, see Second Amended Complaint at
¶ 12. There, claims arising from conduct related to federal
health insurance and federal benefits are clearly carved out.
Thus, paragraph 12 constitutes an express claim waiver under the
O'Shea analysis cited in the 5/1/24 Order. See 5/1/24 Order,
2024 WL 1907396, at *11. It also constitutes an explicit
renouncement of the claims upon which federal officer removal
was based. See Puerto Rico v. Express Scripts, 119 F.4th at 187.

        This Court has also considered Maryland v. 3M Co., 130
F.4th 380 (4th Cir. 2025), the supplemental authority submitted
by Caremark. In that case, the Fourth Circuit held that the
plaintiff states' disclaimers were not dispositive of the issue
of whether the required nexus was present. Id. at 390. The
plaintiffs attempted to disclaim any recovery related to
contamination from per-and polyfluoroalkyl substances ("PFAS")
that did not come from aqueous film-forming foam ("AFFF"), a
product that was produced in part for the United States

military. See id. at 385 (Maryland's disclaimer); id. at 386

(South Carolina's disclaimer).[10] However, 3M represented that

> the PFAS from 3M's non-AFFF products
> indistinguishably commingled with the PFAS from
> 3M's Military AFFF. To the extent the PFAS
> contamination came from Military AFFF, 3M
> intended to raise the government contractor
> defense. And because the PFAS from both sources
> were commingled, PFAS from 3M's Military AFFF
> "inseparably contributed to any alleged 'non-
> AFFF' PFAS contamination."

Id. at 386; see also id. at 384 ("PFAS could pose a serious

threat to the environment. PFAS dissolve easily in water due to

their chemical makeup, spread quickly and broadly, and may

remain in the environment indefinitely.").

Here, although Caremark negotiates rebates

collectively for FEHBA plans and non-FEHBA plans, the State

alleges that Caremark "administer[s] rebates and pharmacy claims

on a plan-by-plan basis." [Second Amended Complaint at ¶ 30.] No

facts to contradict this allegation have been raised. Thus, this

Court assumes for purposes of the Renewed Motion that any

alleged harm that Caremark's rebate practices cause to non-FEHBA

plans can be determined without examining how Caremark's rebate

practice affect FEHBA plans.

---

[10] Both Maryland and South Carolina each filed a separate
action addressing AFFFs in general, including AFFF produced for
the military and other AFFF products. See Maryland v. 3M, 130
F.4th at 385-86.

Even if Caremark satisfied the causal nexus requirement for federal officer removal jurisdiction, this Court concludes that the State's disclaimer in paragraph 12 of the Second Amended Complaint negates that causal nexus.

**IV.  <u>Ruling</u>**

Under either the <u>Cedars-Sinai</u> analysis or the <u>Gonsalves</u> analysis, Caremark has failed to establish the required causal nexus. Alternatively, if Caremark had established the required causal nexus, paragraph 12 of the Second Amended Complaint negates that causal nexus. In light of this ruling, it is not necessary to address the colorable defense requirement. The current record, which is more fully developed than the record that existed at the time of the 5/1/24 Order, does not support federal officer removal jurisdiction. The instant case must be remanded to the state court.

<u>**CONCLUSION**</u>

For the foregoing reasons, the State's Renewed Motion to Remand, filed November 27, 2024, is HEREBY GRANTED. The Clerk's Office is DIRECTED to effectuate the remand on **May 29, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 28, 2025.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

STATE OF HAWAI`I, EX REL. ANNE E. LOPEZ, ATTORNEY GENERAL VS.
CAREMARKSPCS HEALTH, L.L.C., ET AL.; CV 23-00464 LEK-RT; ORDER
GRANTING PLAINTIFF'S RENEWED MOTION TO REMAND